UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF KENTUCKY
OWENSBORO DIVISION
CIVIL ACTION NO. 4:10CV-00127-JHM

SABRINA AUSTIN-CONRAD                                                                       PLAINTIFF

vs.

RELIANCE STANDARD LIFE INSURANCE COMPANY                         DEFENDANT

**MEMORANDUM OPINION AND ORDER**

Before the court is Plaintiff Sabrina Austin-Conrad's ("Austin-Conrad") motion for permission to undertake discovery in this case (DN 12). Defendant Reliance Standard Life Insurance Company ("Reliance") has responded in opposition (DN 13), and Plaintiff has replied (DN 14). The court, having reviewed the record and being otherwise sufficiently advised, will grant the motion in part and deny it in part.

**I. BACKGROUND**

This dispute arises from the termination of benefits under a long-term disability ("LTD") insurance policy. Austin-Conrad worked as a surgical nurse for Trover Clinic Foundation, Inc., where she was a participant in an LTD benefits plan subject to the Employee Retirement Income Security Act of 1974, 29 U.S.C. §§ 1001 *et seq.* ("ERISA"), and for which she paid by payroll deduction from her salary. The plan designated Reliance as the insurer of the disability benefits and the claim fiduciary.

In 2007, Austin-Conrad made a claim for disability benefits under the plan and, after satisfying an elimination period, began receiving payments under the plan's "own occupation"

disability provision, whereby she was eligible for benefits if she was unable to perform the duties of her regular occupation.  After receiving benefits for a period of twenty-four months under the "own occupation" provision, her benefits payments shifted to the "any occupation" plan provision, whereby she remained eligible for benefits only if she was unable to engage in any occupation for which her education, training or experience would reasonably allow.

While receiving benefits she applied for disability benefits with the Social Security Administration ("SSA"), as required by the plan.  On her second application she was awarded benefits.  In light of this determination, Reliance demanded reimbursement from Austin-Conrad's SSA past due benefits award and thereafter reduced her ongoing payments to account for her SSA disability income.

In 2012 Reliance asked Austin-Conrad to undergo an independent medical examination ("IME").  Reliance utilized MES Solutions to handle the IME scheduling.  MES Solutions arranged for an examination by Dr. Sean E. Samuels, who conducted a neuropsychological examination on December 4, 2012.  His report is on the letterhead of Luzio & Associates Behavioral Sciences, Inc.  Reliance terminated Austin-Conrad's benefits following the IME.

Austin-Conrad appealed the termination of benefits, and Reliance utilized the services of MES National Disability Service Center to schedule an IME with Dr. Jeffrey E. Hazelwood on September 26, 2013.  On two separate occasions in 2013, Reliance conducted an internal Residual Employability Analysis ("REA").  Austin-Conrad notes that both REAs were completed by the same person, Jody Barach, however her title on the reports is different.  On one her title is identified as "Supervisor, Rehabilitation Services" and on the other it is identified as "Manager, Medical and Vocational Services."  Following Reliance's review of the Hazelwood

IME and the REAs, it denied Austin-Conrad's appeal. This action follows, in which Austin-Conrad alleges Reliance's denial of benefits decision was arbitrary and capricious.

### Plaintiff's Motion

As discussed later in this order, resolution of challenges to an ERISA-regulated plan's denial of benefits is generally limited to the evidence contained in the administrative record. A limited exception exists where the plan is responsible for both determining eligibility for benefits and paying those benefits, and discovery may be allowed into whether there is a conflict of interest in the claim evaluation process. Austin-Conrad claims such a conflict of interest is present in this case and she requests permission to undertake written discovery.

### Discovery related to bias in the evaluation process.

Austin-Conrad seeks information which may reveal a bias in favor of denial of benefits claims. She lists the specific topics of discovery as: (1) incentive, bonus, or reward programs or systems, formal or informal, for an employee involved in reviewing disability claims; (2) contractual connections between the conflicted administrator/payor and the vendors/reviewers utilized in plaintiff's claim; (3) statistical data regarding the number of claims files sent to the vendors/reviewers and the number of denials which resulted; (4) statistical data concerning the number of times the vendors/reviewers found claimants unable to work in at least a sedentary occupation or found that the claimants were not disabled; and (5) documentation of administrative processes designed only to check the accuracy of grants or claims.

### Discovery of the claims manual and related internal policies.

Austin-Conrad contends that Reliance should have included in the administrative record any manuals or policies upon which it relied in the determination of her claim. She also complains that Reliance's records employ abbreviations or codes for which there is no

corresponding explanation, as well as documents which are difficult to read, and Reliance should either supplement the record or she should be permitted to conduct discovery on these items.

**Subpoena duces tecum to independent medical examiners.**

In addition to discovery from Reliance, Austin-Conrad also requests permission to issue subpoenas duces tecum to IME Drs. Samuels and Hazelwood. She proposes to inquire of the doctors the number of IMEs they perform in comparison to the number of non-IME patients they see, with particular emphasis on those relating to complaints of fibromyalgia, chronic fatigue syndrome, polyneuropathy and associated depression and anxiety. She also proposes inquiring into the compensation they receive for conducting IMEs in comparison to what they receive in other aspects of their medical practices, production of IRS 1099 forms for work for insurance companies or medical examination companies, lists of publications related to IMEs, lists of previous testimony, and copies of their schedules for the week surrounding her IME. She also proposes production of copies of IMEs on other patients, with redaction to protect patient privacy.

## II. DISCUSSION

Where a plan vests the administrator with discretion to determine the eligibility for benefits and construe the plan's terms, review looks to whether the administrator's decision was arbitrary and capricious. Firestone Tire & Rubber Co. v. Bruch, 489 U.S. 101, 115 (1989). The parties agree that this is the applicable standard in the case. Review of the denial of benefits is ordinarily confined to the administrative record, and the court may not consider any evidence not presented to the plan administrator. Wilkins v. Baptist Healthcare Sys., Inc. 150 F.3d 606, 619 (6th Cir. 1998).

It is well settled in the Sixth Circuit, however, that a court may consider evidence outside the administrative record if offered in support of a procedural challenge to the administrator's decision, such as an allegation of bias or a lack of due process. Busch v. Hartford Life & Accident Ins. Co., No. 5:10-00111-KKC, 2010 U.S. Dist. LEXIS 101881, at *2 (E.D. Ky. Sept. 27, 2010) (*citing* Wilkins, 150 F.3d at 619). There is an inherent conflict of interest whenever a plan administrator evaluates and pays benefits on claims. Brainard v. Liberty Life Assur. Co. of Boston, CA No. 6:14-110-DCR, 2014 U.S. Dist. LEXIS 178492, at *5 (E.D. Ky. Dec. 30, 2014) (*citing* Metro. Life Ins. Co. v. Glenn, 554 U.S. 105, 117 (2008)). "If a plan gives discretion to an administrator that was operating under a conflict of interest, the Court must weigh that conflict as a factor in determining whether the administrator abused its discretion." Knox v. Prudential Ins. Co. of Am., CA No. 3:13-CV-00424-CRS, 2014 U.S. Dist. LEXIS 170597, at *5 (W.D. Ky. Dec. 10, 2014). The parties are in agreement that Reliance is both the evaluator of eligibility and payor of benefits under the plan (*See* DN 1, ¶ 7 and DN 5, ¶ 7).[1]

While the Supreme Court has acknowledged conflict of interest as a factor to be considered in reviewing a claim denial, the Court made clear that it did not envision a specific evidentiary showing as to what constitutes an improper conflict of interest, and conferred discretion on courts in using conflict of interest as a factor in determining whether a plan administrator abused its discretion:

> Neither do we believe it necessary or desirable for courts to create special burden-of-proof rules, or other special procedural or evidentiary rules, focused narrowly on the evaluator/payor conflict. In principle, as we have said, conflicts are but one factor among

---

[1] In Clark v. Am. Elec. Power Sys. Long Term Disability Plan, 871 F. Supp.2d 655 (W.D. Ky. 2012), this court employed a two-phase criteria regarding discovery. First, the claimant was permitted to conduct discovery to determine whether the plan was in fact both the claim evaluator and payor. If the claimant was successful in making this demonstration, then additional discovery would be permitted. Such a structure was necessary in that case because the plan disputed it both evaluated and paid claims. In this case, there is no such dispute and a two-phase discovery structure need not be considered.

> many that a reviewing judge must take into account. Benefits decisions arise in too many contexts, concern too many circumstances, and can relate in too many different ways to conflicts – which themselves vary in kind and in degree of seriousness – for us to come up with a one-size-fits-all procedural system that is likely to promote fair and accurate review. Indeed, special procedural rules would create further complexity, adding time and expense to a process that may already be too costly for many of those who seek redress.

Metropolitan Life Ins. Co. v. Glenn, 554 U.S. 105, 116-17 (2008).

A "mere allegation" of bias is insufficient to authorize discovery. Pemberton v. Reliance Std. Life Ins. Co., CA No. 08-86-JBC, 2009 U.S. Dist. LEXIS 2070, at *3 (E.D. Ky. Jan. 13, 2009). Courts have struggled to resolve the question of what constitutes more than "mere allegation" for purposes of authorizing discovery. One school of thought is that the fact that a plan administrator both evaluates and pays claims, and, therefore has an inherent conflict of interest, is sufficient to constitute more than a "mere allegation," and discovery in such cases is authorized. Kasko v. Aetna Life Ins. Co., 33 F. Supp.3d 782, 786-87 (E.D. Ky. 2014) (collecting cases). The other school of thought requires a claimant to do more than simply establish the existence of an inherent conflict of interest. The claimant must produce some evidence suggesting a likelihood that discovery would lead to probative evidence. Id. at 787 (collecting cases). A recent case from the Eastern District of Michigan explains the reasoning underlying a requirement that a claimant present some threshold evidence before discovery is authorized. In affirming the magistrate judge's ruling on discovery, the district court noted the magistrate judge:

> [R]ejected "the proposition that an inherent decision maker/payor conflict automatically entitles a benefits claimant to discovery," reasoning that "[a]cceptance of that view would effectively eliminate the general rule of discovery in ERISA suits in a substantial portion of such cases." . . . [The magistrate judge] acknowledged the apparent anomaly that "a claimant must *have*

6

> some evidence of bias before being allowed to seek such evidence in discovery," but reiterated that "an unconditional right to discovery, in the absence of predicate showing that it is likely to be productive, would completely eviscerate the general rule against discovery in ERISA benefits review cases and undermine the well-recognized legislative intent that the statute provide parties with a prompt and economical means of resolving disputes."

Mellian v. Hartford Life & Accident Ins. Co., No. 14-10867, 2014 U.S. Dist. LEXIS 177015, at *9-10 (E.D. Mich., Dec. 24, 2014).

Within our sister Eastern Kentucky District, decisions have largely held to the *prima facia* conflict standard.

> Under Glenn, the presence of the conflict of interest, on its own, is apparently sufficient to permit a court to allow discovery beyond the administrative record. Likewise, pointing out that conflict of interest would meet the Sixth Circuit's requirement of showing more than a "mere allegation of bias." Because, as a matter of law, a conflict of interest exists, the plaintiff has presented more than such an allegation.

Pemberton, 2009 U.S. Dist. LEXIS 2070, at *5; *see also* Brainard, 2014 U.S. Dist. LEXIS 178492, at *5.

Within our judicial district, there appears a leaning toward the "showing something more" criteria. *See* Knox, 2014 U.S. Dist. LEXIS 42897, at *5-6, *aff'd* CA No. 3:13-CV-00424-CRS, 2014 U.S. Dist. LEXIS 170597 (W.D. Ky. Dec. 10, 2014).

Ultimately, it appears the Sixth Circuit has left it to the district courts to determine, on a case-by-case basis, whether the fact of an inherent conflict is sufficient to authorize discovery or whether some additional showing is needed.

> We have noted in a few ERISA cases that discovery might have been appropriate under the circumstances. . . . In other cases, we have affirmed the denial of discovery and explained that a "mere allegation of bias is not sufficient to permit discovery under *Wilkins*' exception." . . . Although [defendant] argues that these cases should be interpreted to impose a threshold evidentiary

7

> showing of bias as a prerequisite to discovery under *Wilkins*, the Supreme Court's admonition in *Glenn* discouraging the creation of special procedural or evidentiary rules for evaluating administrator/payor conflicts of interest counsels against it. That does not mean, however, that discovery will automatically be available any time the defendant is both the administrator and the payor under an ERISA plan. The limitation on discovery recognized in *Wilkins* is a result of the determination that matters outside the administrative record are ordinarily not relevant to the court's review of an ERISA benefit decision. District courts are well-equipped to evaluate and determine whether and to what extent limited discovery is appropriate in furtherance of a colorable procedural challenge under *Wilkins*.

Johnson v. Conn. Gen. Life Ins. Co., No. 08-3347, 324 Fed. Appx. 459, 466-67 (6th Cir. Apr. 7, 2009) (citations omitted).

In some cases the "something more" standard may be necessary to avoid wholesale discovery of such a nature so as to "eviscerate the general rule against discovery in ERISA cases." Johnson recognizes, however, that the court must consider the unique facts of each case in light of Glenn's rejection of any "one-size-fits-all" approach and admonition against establishing rigid rules or standards. Consequently, in some cases the bare allegation of a conflict of interest may suffice in light of the facts of the case. "Without such discovery, plaintiffs would be severely hindered in their ability to obtain evidence to show the significance of the conflict of interest." Brainard, 2014 U.S. Dist. LEXIS 178492, at *9. The underlying rational is that "[D]enying discovery until there has been an initial showing of bias 'essentially handcuffs the plaintiff who . . . will rarely have access to any evidence beyond a bare allegation of bias, in the absence of discovery." Kasko, 33 F. Supp.3d at 786-787 (*quoting* Kinsler v. Lincoln Nat. Life Ins. Co., 660 F. Supp. 2d 830, 836 (M.D. Tenn. 2009)).

In this particular case, Austin-Conrad has made a *prima faci*e showing of an inherent conflict of interest by alleging that Reliance is both the entity responsible for evaluating and

8

paying her claim. Moreover, she notes the SSA determined she was fully disabled, yet Reliance subsequently determined that she was not fully disabled. While the parties disagree over whether Reliance "discounted" or "distinguished" the SSA determination in rejecting it as dispositive, the fact remains that Reliance gave greater weight to the findings of its own IME and REAs than the SSA determination. Austin-Conrad also questions whether Reliance followed guidelines requiring an independent review of her appeal by a separate department. Reliance does not address this issue in its response. These challenges constitute more than a "mere allegation" of bias.

Any discovery is not without limits and the court retains discretion to determine the extent to which it is appropriate to further a colorable procedural challenge. The scope of inquiry is limited to the conflict of interest and allegation of bias. Brainard, 2014 U.S. Dist. LEXIS 178492, at *9; Pemberton, 2009 U.S. Dist. LEXIS 2070, at *11. In determining the scope of discovery, the court must balance the claimant's interest in obtaining relevant information against the primary goal of ERISA of providing inexpensive and expeditious resolution of claims. Brainard, 2014 U.S. Dist. LEXIS 178492, at *10-11. Austin-Conrad's motion is analyzed within this framework.

### A. Recognized topics for discovery.

Topics upon which discovery has been approved are as follows:

> (1) Incentive, bonus or reward programs or systems, formal or informal, for any employees involved in any meaningful way in reviewing disability claims.[2]
>
> (2) Contractual connections between the administrator and the reviewer utilized in the plaintiff's claim, and financial payments paid annually to the reviewers from the administrator.[3]

---

[2] Kasko v. Aetna Life Ins. Co., 33 F. Supp.3d 782, 788 (E.D. Ky. 2014) (*quoting* Myers v. Prudential Ins. Co. of Am., 581 F. Supp.2d 904, 914 (E.D. Tenn. 2008)).
[3] Id. (*citing* Pemberton at *3).

9

(3)   Statistical data regarding the number of claims files sent to the reviewers involved in the plaintiff's claim and the number of denials which resulted.[4]

(4)   Statistical data regarding the number of times the reviewers involved in the plaintiff's claim found claimants able to work in at least a sedentary occupation or found the claimants were not disabled.[5]

(5)   Documentation of administrative processes designed only to check the accuracy of grants of claims (limited to claims guidelines actually consulted to adjudicate plaintiff's claim).[6]

It is important to note that a cursory reading of Pemberton might suggest that a broad range of statistical data may be discovered, but on closer reading, one will note that the court considered the plan's objection to the burdensomeness of the requests and concluded "[i]n the instant case, the plaintiff's request for the statistical data has been sufficiently narrowed to include only those reviewers who were involved in the plaintiff's claim." 2009 U.S. Dist. LEXIS 2070, at *10. "An administrator's decision to deny benefits may be influenced by a broad range of legitimate factors. Statistical data, amassed from the results of many unrelated benefits claims, would not account for individualized circumstances leading to the decision in each case." Knox, 2014 U.S. Dist. LEXIS 170597, at *10.

Specific topics related to reviewer credibility are not subject to discovery. These include reviewer personnel files; reviewer performance reviews; employee pay records; information regarding the training and qualifications of reviewers; whether reviewers have ever faced criminal charges, civil suits, or disciplinary actions; whether reviewers failed to achieve board certifications; and a reviewer's treatment activity. Clark v. Am. Elec. Power Sys. Long Term Disability Plan, 871 F. Supp.2d 655, 661 (W.D. Ky. 2012) (citations omitted).

---

[4] Id. (*quoting* Pemberton at *3).
[5] Id. (*quoting* Pemberton at *3)
[6] Id. (*citing* Mullins v. Prudential Ins. Co. of Am., 267 F.R.D. 504, 513 (W.D. Ky. 2010)).

10

## B. Austin-Conrad's discovery requests.

Austin-Conrad seeks discovery of whether there is any incentive, bonus or reward program or system, formal or informal, for any employee involved in reviewing disability claims. This is a topic recognized as relevant to the issue of bias and therefore discoverable.

Her next topic of discovery is contractual connections between the reviewers utilized in her claim. Reliance argues that discovery related to the physicians performing the IMEs is not relevant, as they were not the decision makers in the case, and the court does not review their decisions (DN 13, p. 5). However, if the decision makers relied on opinions or reports which may have been unduly influenced by financial incentives, a court may benefit from information revealing the compensation. Kasko, 33 F. Supp.3d at 789 (citation omitted); *see also* Crider v. Life Ins. Co. of N. Am., CA No. 3:07-CV-331-H, 2008 U.S. Dist. LEXIS 6715 (W.D. Ky. Jan. 29, 2008) (Indeed, "if [Aetna] relied on the third-party reviewers whose opinions or reports may have been unduly influenced by financial incentives, the Court would benefit from information revealing the compensation arrangements in place."). This is a topic recognized as relevant to the issue of bias and therefore discoverable.

Austin-Conrad next seeks statistical data regarding the number of claims files sent to the reviewers and the number of denials which resulted. As before, this is a recognized topic of discoverable information. Any such discovery, however, must be limited to those persons reviewing her claim. Any such discovery must also be restricted to a reasonable period of time. Plaintiff suggests no time-frame, but a period of ten years has been approved in Pemberton.

Her next request is for statistical data concerning the number of times the reviewers found claimants able to work in at least a sedentary occupation or found that the claimants were not disabled. This request mirrors the discovery topic for which permission was granted in

Pemberton, and here Austin-Conrad has limited her request to those reviewers who participated in her claim. She has not, however, placed any temporal limit on the request. In Pemberton the court found a period of ten years reasonable. Brainard found reasonable a period of five years. In addition, Austin-Conrad does not limit her request to reviews performed for Reliance. If the objective of this discovery is to uncover any pattern of incentive or reward for findings of non-disability, then only those reviews performed for Reliance bear relevance, and only those performed within the last ten years.

Next, Austin-Conrad seeks documentation of administrative processes designed only to check the accuracy of grants of claims. As Pemberton and Mullins v. Prudential Ins. Co. of Am., 267 F.R.D. 504, 513 (W.D. Ky. 2010) note, however, any such discovery is limited to claims guidelines actually consulted to adjudicate her claim.

Moving on from the categories identified in Kasko, Austin-Conrad seeks production of Reliance's claims manuals and policies, contending that they should already be part of the administrative record as "pertinent documents," relied upon by Reliance's decision makers in making the disability determination. She also notes that the administrative record contains a number of abbreviations for which she is unsure of their meaning. In its response, Reliance offers to provide an explanation of any abbreviations Austin-Conrad finds unclear, however she argues that the documents will shed light on the abbreviations used in the administrative record and that "claims management information must be hidden behind some of these abbreviations" (DN 14, p. 3). In its response, Reliance suggests that it send Austin-Conrad an index to any manuals or procedures so that she might identify those abbreviations she requests. This proposal seems reasonable, and discovery is limited to those manuals or policies upon which Reliance relied in determining Austin-Conrad's disability claim.

Austin-Conrad's next area of inquiry delves into obtaining information from the independent medical examiners. She wishes to obtain information via *subpoena duces tecum* regarding the number of IMEs the physicians perform in comparison to the number of patients they treat. This area of inquiry encroaches upon the "reviewer credibility" realm and is impermissible. Busch v. Hartford Life & Acc. Ins. Co., CA No. 5:10-00111-KKC, 2010 U.S. Dist. LEXIS 101881, at *11-12 (E.D. Ky. Sept. 27, 2010) (question of whether reviewers recently treated patients is unlikely to lead to evidence concerning conflict of interest). Similarly, her request for a "list of IME authored publications, lists of previous testimony, copies of the examiner's schedules for the week surrounding the time they examined Ms. Austin-Conrad [and] copies of the independent medical examination reports with the patients' names redacted to protect their privacy" (DN 12-1, p. 12), all venture too far afield from matters of relevance to her particular claim and of bias on the reviewers' part or encroach upon the area of reviewer credibility. Austin-Conrad's request for information about compensation received by the physicians in comparison with that received for patient care and the amount received for IMEs for insurance companies or medical examination companies likewise goes to reviewer credibility. The amount paid by Reliance to the physicians, however, is a fair subject of inquiry. Brainard, 2014 U.S. Dist. LEXIS 178492, at *10. This information, however, is equally within Reliance's possession and is more appropriately sought by interrogatory to Reliance than subpoena to a non-party.

13

## III. ORDER

**IT IS HEREBY ORDERED** that the motion of Plaintiff Sabrina Austin-Conrad for permission to undertake discovery (DN 12) is GRANTED IN PART and DENIED IN PART, as set forth in the memorandum opinion and order. In a separate order, the court will schedule a telephonic status conference to discuss any modification of the scheduling order necessary in light of this order.

Copies to:	Counsel of Record